## Lee Ogburn v. The State.

No. 7945. Decided April 9, 1924.

Rehearing denied May 28, 1924.

1.—Bringing Stolen Property into the State of Texas—Insufficiency of the Evidence.

Where, upon trial of bringing stolen property into the State of Texas, the evidence is entirely lacking in connecting appellant in any way with having brought the alleged stolen car from Arkansas into Texas, the judgment must be reversed and the cause remanded.

2—Same—Rehearing—Matters Dehors the Record—Practice on Appeal.

This court will neither reverse nor affirm cases upon statements, or appeals resting upon matter dehors the record, and after again scrutinizing the facts in the instant case this court is confirmed in its conclusion that the evidence is insufficient to sustain the conviction.

Appeal from the District Court of Bowie.   Tried below before the Honorable Hugh Carney.

Appeal from a conviction of bringing stolen property into the State of Texas; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*G. C. Barkman* and *Keeney & Dalby,* for appellant.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney and *Wright Patman,* District Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for bringing stolen property into the State of Texas, punishment being two years confinement in the penitentiary.

Appellant and one Dorris Parker were charged by indictment with having on the 16th day of June, 1921, in the State of Arkansas stolen an automobile from G. R. Payne and with having brought the same into the State of Texas on or about the 25th day of June thereafter.   The prosecution is brought under Article 1431 of our penal Code and the gravamen of the offense is bringing into Texas the alleged stolen automobile.   A great many questions are raised but they all largely revolve around the pivotal one of whether the facts support the conviction, and our discussion will be confined to that one issue.

Payne lived in Texarkana on the Arkansas side of the line.   On the 16th day of June, 1921, he had stolen from him a Ford automobile.   On the 20th day of July it was returned to him by sheriff Richardson on the Texas side of the line.   Payne had no information whatever as to who had stolen his car and was in possession of no facts further than that the car returned to him by the sheriff was identified as the one stolen from him about a month before. W. T. Jordan was a deputy under G. A. Richardson, sheriff of Bowie County, Texas.   At the time the arrest of Parker and appellant occurred Jordan was in Shreveport, Louisiana.   He had telephoned sheriff Richardson to arrest Ogburn and Parker on another charge which appears to have had no connection whatever with the Payne automobile.   Richardson was acquainted with appellant but not with Parker and on the day of the arrest was watching appellant's house. He saw Parker drive up in front of the house in an automobile, and saw appellant bareheaded leave his residence and walk to the car and talk to Parker.   The sheriff approached and placed them under arrest.   Appellant asked permission to go in the house to get his hat and requested the sheriff to permit him and Parker to drive to Richardson's office as he (appellant) did not want any notoriety about being arrested.   The sheriff agreed to this and appellant, after getting his hat, got in the car with Parker and they started towards the sheriff's office, sheriff Richardson followed in his car.   Somewhere

en route appellant stepped out of the car in which he was riding and Parker then headed it east towards the Arkansas line and for the time escaped. Appellant made no effort to get away but waited for the sheriff, got in his car and was taken to the sheriff's office and turned over to a deputy. The sheriff then went to the Arkansas side of the city and for some thirty minutes searched for Parker but failed to find him. Upon returning to his office on the Texas side he found Parker there waiting for him. Appellant made bond in the charge on which he was arrested and was released on the same day. Deputy Jordan appears to have returned from Louisiana to Texarkana that night and the next morning met appellant who asked Jordan where he had been, and was told that he had been to Boston, the county seat of Bowie County, to take Parker to jail; appellant said he thought Parker had made bond; Jordan told him the sheriff did not intend to let him make bond until Parker told where the car was. Appellant then inquired what car Jordan was talking about and upon being informed that it was the car in which Parker was riding the day before when he escaped from the sheriff appellant asked if it was a stolen car, and upon being told by Jordan that they thought so, replied that Parker had been trying to sell him (appellant) the car, but that if it was stolen he did not want it and would tell Jordan where it was. He did tell Jordan where that after he had given bond the day before he had gotten the car on the Arkansas side of the line where Parker had left it and had driven it some sixteen miles east of Texarkana were he had gone to see if he could make bond for Parker; that he had a blowout in one casing and had left the car in Armstrong's garage. Upon this information Jordan and the sheriff found the car exactly where appellant told him it was, returned it to Texarkana and later delivered it to the owner, Mr. Payne. When the officers reached Armstrong's place they found only three casings on the car in question. Armstrong lived on the Arkansas side of the line about twenty miles from Texarkana. He testified that appellant came to his house in the automobile in question, said he had gotten off of his road; that he was looking for a party to sign a paper and that he may have said a bond; that witness had no distinct recollection of just what was said in that connection, but that appellant said he had had a blowout and could go no further in his car. Armstrong was just getting ready to start to Texarkana in his own car and invited appellant to return to Texarkana with him which he did, and at Armstrong's invitation appellant drove the car in question into his garage before leaving. A few days later Armstrong met appellant on the street in Texarkana and asked him what about the car he had left at his (Armstrong's) house to which appellant replied that it did not belong to him, that it belonged to another party and that he had told the officers where it was and that they had gotten it or would get it. It was further in

evidence through Jordan that while he was on the way to Boston with Parker to place him in jail Parker claimed the car belonged to him, that he had a bill of sale to it and intended to sell it.

It appears from the foregoing evidence that the officers suspected that the car in which Parker had been riding on the day of the arrest was a stolen car but had no information whatever as to what Parker had done with it after he escaped from the sheriff and returned with it to the Arkansas side of the line. They found the car solely as a result of the information given them by appellant which seems to have been entirely voluntary on his part. It appears singular that if appellant had been connected with the car theretofore in a guilty manner he would thus have voluntarily advised the officers as to the exact location of the car and admitted his connection with it in its arrival at such place. To our minds the evidence is entirely lacking in connecting appellant in any way with having brought the car from Arkansas to Texas. The first time he was seen in connection with it at all was when his co-defendant Parker drove it up in front of appellant's residence. There is nothing to show that at this time he knew it was a stolen car. If he did know it or learned it from Parker after they had started from appellant's residence to the sheriff's office, and he intended to aid Parker in escaping with the stolen car and stepped out of it for that purpose, it can not be said to have connected him in any way with bringing the car into Texas for that offense had already been completed, and if connected with any act of Parker at all it was in aiding him to return the car to the Arkansas side of the line. However, his act in leaving the stolen car appears to be entirely consistent with his innocence. He may have learned that Parker intended to temporarily escape from the sheriff because the car in which he was riding was stolen, and appellant may not have cared to be a party to this act and left the car on that account.

Appellant may have had some guilty connection with the Payne automobile but the evidence in the record does not show it. Every act of his, relative to the car and the information volunteered by him as to its whereabouts is entirely consistent with his innocence, and to our minds the facts fall far short of proving against him the offense of bringing the stolen car into the State of Texas or of connecting him in a guilty way with the car in any respect. Mr. Armstrong testified that when appellant appeared at his house with the car he introduced himself under his right name, explaining his presence as heretofore stated. This was consistent with what he told Jordan the next morning as to the location of the car, and his connection with it.

Believing the evidence to be wholly insufficient to support the judgment, the same is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

May 28, 1924.

LATTIMORE, JUDGE.—In its motion for rehearing the State refers to many things that are not in the record. This court will neither reverse nor affirm cases upon statements or appeals resting upon matters dehors the record. We have again carefully scrutinized the facts in this case and are but confirmed in the conclusions announced in the original opinion. All the evidence in the record was introduced by the State and nothing therein suggests connection of appellant with the man Parker in any other criminal transaction, and but faintly suggests his connection with Parker in the instant transaction. There is absolutely nothing to show that appellant had anything to do with bringing the alleged stolen car into Texas. This was the charge against him in the indictment. The first evidence remotely connecting appellant with said alleged stolen automobile was when same was driven up in front of appellant's residence by Parker, and appellant came around his house bareheaded out to the street where Parker was in the car and stood there and talked to him and then got in the car bareheaded and was sitting there talking with Parker when the officer arrested both of them. After arrest it appears that appellant desiring to avoid notoriety in the neighborhood where he lived, asked permission of the sheriff to ride in the car with Parker to the court house and that on the way the car stopped and appellant got out and Parker drove off. Appellant made no effort to escape and in a short time Parker came to the court house. The fact that appellant on the same day and after he made bond drove the alleged stolen car to a point seven miles from Texarkana on the Arkansas side for the purpose of making bond for Parker, and that he left the car there at Mr. Armstrong's house, would seem to be devoid of any significance showing guilt in view of the fact that it was testified to by the State witnesses that appellant at no time claimed to own the car or have any interest in it but always disclaimed ownership or interest therein and himself made known to the officers the whereabouts of the car and stated that it belonged to Parker and that Parker was trying to sell it to him.

The State's motion for rehearing will be overruled.

*Overruled.*